*Jack T. Niland,* El Paso, for appellant.

*William E. Clayton,* District Attorney, *Jack N. Fant,* First Assistant District Attorney, El Paso, and *Wesley Dice,* State's Attorney, Austin, for the state.

MORRISON, Judge.

The offense is murder; the punishment, 20 years.

The appellant was the operator of a street car which ran across the international border between Juarez, Mexico, and El Paso, Texas. The theory of the state was that the deceased, who had been drinking, asked the appellant for a transfer; that this request irritated the appellant, who hit the deceased over the head with a piece of the street car equipment c a l l e d a "switch bar," causing his death; that the deceased was unarmed at the time and made no threatening gesture toward the appellant.

The appellant testified that when the deceased boarded the street car in Mexico he asked for a transfer, which was given him; that after arriving in El Paso the deceased demanded another transfer; that he told the deceased to look in his pocket;

that the deceased again demanded a transfer, saying that he was a man of few words, and attacked him with a knife; and that he hit him in his own self-defense.

With this conflict in the evidence as a background, we must pass upon the alleged error of the court in refusing the appellant permission to reproduce the testimony of the witness Powell which was taken at an inquest held in connection with the death of the deceased. There can be no question of the materiality of Powell's testimony since the bill recites that he had testified that the deceased had an open knife in his hand which he held in a threatening manner toward the appellant. The state does not question that Powell's testimony was taken under such circumstances as to make it admissible. The court qualified the bill, and from this we learn that the court did not feel that it was sufficiently shown that Powell had permanently gone beyond the limits of the state or that the appellant had exercised diligence in order to secure the attendance of the witness.

We shall discuss each question in turn.

The offense was alleged to have been committed on February 23, 1953. The indictment was returned on May 8, and the trial was held in November. The appellant filed an affidavit, in compliance with the terms of Article 749, V.A C.C.P., stating that Powell had removed beyond the limits of the state. The bill further recites that Mrs. Powell, the witness' mother, testified that she lived in Odessa; that her son left Texas on May 30, 1953, and went to Topeka, Kansas; and that when he left he had told her that he would probably not be back, as he intended to get work and stay up in that country. The court qualified the bill by certifying that Mrs. Powell also testified:

"That her son does call Odessa, Texas his home and although he worked in various other places from time to time, that on each occasion he would come back home. That the only information she has as to her son's present whereabouts was through his sister, and that her son, Tommy Powell, had no permanent residence in any place except where he calls home, which is Odessa, Texas."

While it is true that there is much in the record which would have strengthened the bill but was not included therein, we have concluded from the face of the bill that the trial court abused his discretion in the premises.

Both the state and the appellant rely upon the recent deci-
385, 235 S.W. 2d 446, 449. In that case the evidence was offered
by the state, but the same rules apply in a case where the evidence
is offered by the accused. In that case the witness had been
gone three months, and there was no showing of any declaration
of intention on the part of the witness when he left. In this case
the witness had been gone five months, and it was shown that
when he left he said that he probably would not be back. In
the Cumpston case we summarized the rule as follows:

" . . . where the proof shows that the witness is temporarily ab-
sent from the State, as on a journey which in the ordinary course
of things will be ended by return, the predicate is insufficient,
but when the residence of the witness is shown as outside the
State, and his return is indefinite, the prior testimony may be
received.

In the case before us the court further qualified the bill as
follows:

"Further, the Court excluded the testimony of Tommy Powell
on the grounds that there was no diligence shown to produce
the witness, Tommy Powell, the evidence in the case being that
the indictment was returned on the 8th day of May, and that
the witness, Tommy Powell, was at what is called his home at
Odessa, Texas, until the 30th day of May and could have been
placed under process of the Court at that time."

We have been cited no case and know of none which would
require a showing of diligence on the part of the state or the
accused before advantage might be taken of the terms of Articles
749 and 750, V.A.C.C.P.

We are not impressed with the argument of the state that
the appellant should be denied the right to reproduce the testi-
mony in question because he should have availed himself of
Article 486a (Uniform Act to secure attendance of witnesses
from without state). It was not known what state Powell was
in; therefore, it could not be shown that the witness was avail-
able because of the Uniform Act being in effect in that state.
Nor are we impressed with the state's contention that his plea of
self-defense was amply presented by his own testimony.

Another and more serious question is presented by Bill of
Exception No. 2. Omitting the formal parts, we quote therefrom
as follows:

" . . . Elbert M. Soniat, called by defendant, testified that he was the dispatcher for the El Paso City Lines and on duty the night of February 21, 1953, at about 7:30 in the evening; that he received a phone call from defendant sometime between 7 and 8; that defendant was very excited and was calling from the Gateway (which is at the corner of San Antonio and Stanton Streets where the occurrence took place) ; that the defendant called about 3 minutes after the fight, as a result of which the deceased died. Then counsel for defendant asked the witness 'What did he (defendant) say about it (the fight) at the time,' to which question the State objected which objection was sustained by the Court, and to which question the witness, if permitted to answer, would have answered as follows, ' . . . He had given him a transfer and he told him the transfer was in his pocket, to look in there, and his report was that the man said he was a man of few words and pulled a small knife out of the pocket with the blade open,' and to which ruling the defendant excepted."

The court qualified the bill by stating that the witness was uncertain as to the time and that he excluded the testimony because the time which had elapsed between the altercation and the call had not been definitely shown.

In Farmer v. State, 158 Texas Cr. Rep. 397, 255 S.W. 2d 364, in admitting statements favorable to the state, we said, "Though time is not the sole controlling factor in determining whether a statement is res gestae of the offense, we find here that such was made within not less than 10 nor more than 30 minutes after the homicide, depending upon which witness was correct in his estimate as to time."

The case at bar, we think, presents a stronger case of res gestae than was presented in Dowd v. State, 104 Texas Cr. Rep. 480, 284 S.W. 2d 592. In that case the policeman arrived at the scene of the homicide within about 12 minutes after the killing, and we held it error for the court to refuse to permit him to testify that the appellant told him upon his arrival that he had shot the deceased in self-defense.

As we have said, time is not entirely controlling. The test seems to be whether it was the incident speaking through the actor or the actor speaking after having deliberated.

It would appear that in this case the appellant had serious trouble with one of his passengers; his first reaction would

naturally be to report to his superior and to do so with all haste because the trouble had occurred on his employer's property and they, along with him, would be held accountable therefor. He could not telephone from the street car, and so he went to the nearest place where he might do so. This, together with appellant's state of excitement at the time he made the report, supplies the necessary spontaneity to authorize the introduction of the statement as part of the res gestae of the incident.

The court further qualified the bill by stating that this was a self-serving declaration on the part of the appellant.

In Burnet v. State, 150 Texas Cr. Rep. 575, 205 S.W. 2d 47, Judge Hawkins said, "Res gestae statements may some times operate as self-serving but if they are res gestae they are still admissible."

In view of our disposition of the cause, a discussion of the remaining bills of exception will not be necessary.

For the errors assigned, the judgment of the trial court is reversed and the cause remanded.